353 So.2d 36 (1977)
Joe SCOTT, alias
v.
STATE.
3 Div. 764.
Court of Criminal Appeals of Alabama.
October 4, 1977.
Rehearing Denied October 25, 1977.
George W. Cameron, Jr., Montgomery, for appellant.
William J. Baxley, Atty. Gen., and Linda C. Breland, Asst. Atty. Gen., for the State.
TYSON, Presiding Judge.
The indictment charged the appellant with the robbery of Thomas Northington by taking $30.00 in lawful currency from his person. The jury found the appellant "guilty as charged" and fixed his punishment at fifteen years in the penitentiary. The trial judge entered judgment in accordance with the jury's verdict. Appellant's motion for new trial was overruled.
Thomas Northington testified that on November 13, 1976, he and his sister-in-law, Sheila Northington, were employed at the Western Oil Company station located on West Fairview Avenue in Montgomery. He stated that just before 10:00 PM that evening, he and Sheila were inside the station preparing to close for the day when appellant appeared on the premises. Thomas stated that upon seeing the appellant, he walked outside and asked if he could help, and that appellant told him he would like a six pack of beer. Thomas testified he then went over to the walk-in cooler located on the outside of the station and that appellant followed. Thomas stated that when he walked inside the cooler, appellant shut the door, then immediately re-opened it and stepped inside armed with a .410 sawed-off shotgun. Thomas testified that appellant held the gun in "pistol fashion" and stated, "Give me your money and don't look at me", and that he gave appellant "about thirty or thirty-five dollars . . . [of] the store's money." Thomas stated that appellant then "backed out" of the cooler and closed the door, locking him inside. He testified that before the cooler door closed, he saw a white automobile pull into the station. Thomas stated that he identified the appellant in a line up conducted a week after the incident in question, and he also made a positive in-court identification of the appellant and the weapon appellant used to perpetrate the robbery.
The State then offered the testimony of Sheila Northington who testified that she was inside the station sitting at her desk doing paper work and counting money during *37 the robbery of her brother-in-law, but added that at the time, she was unaware that a robbery was taking place. She stated that she first noticed the appellant when he and another black male (subsequently identified as Archie Perdue, alias Gniskioski Thompkins) came inside the station. Mrs. Northington stated that Perdue asked for a pack of "Kool" cigarettes, and that when she turned around to hand them to him, she saw appellant hand Perdue a sawed-off shotgun. The witness testified that Perdue pointed the gun at her and told her to "give him all her money" and that she replied "Man, you've got to be kidding" to which appellant responded, "No, I'm not." Mrs. Northington stated that Perdue reached inside of her coat pockets to see if she had any money then pushed her into the stockroom which was located at the rear of the station. The witness stated that she then started screaming and that Perdue instructed her to "shut-up or else he would kill [her]." Mrs. Northington testified that she was unable to subdue her emotional outburst, and that because of this, Perdue struck her over the head with the butt of the shotgun. Mrs. Northington stated the shotgun fired when Perdue hit her and that she fell to the floor and "went blank for a little bit." She stated that when she regained consciousness, appellant and Perdue had fled, and that she then activated the station's security alarm system. Mrs. Northington testified she went outside to telephone her employer and there heard her brother-in-law inside the cooler "bamming on the door hollering `Let me out.' "Mrs. Northington testified that she subsequently discovered that approximately two hundred and seventy three dollars were taken from the station's cash drawer. She stated that she later identified appellant in a line up conducted at the police station, and also positively identified the appellant in court as one of the men who robbed her. Mrs. Northington also identified a .12 gauge sawed-off shotgun as the gun utilized by Perdue and the appellant.
Over appellant's objection, the State offered the testimony of Mrs. Becky Roberson who testified she operated Wiggins Grocery located on Woodley Road in Montgomery. Mrs. Roberson stated that on November 18, 1976 (five days subsequent to the incident in question), two black males entered her store, and in response to her saying "Can I help you?", one of them pulled out a twelve gauge sawed-off shotgun and said, "Yes you can, give me your money." Mrs. Roberson stated that when she opened the cash register, "one of them" came around the counter and removed the cash from the drawer and instructed her to put the change in a sack. Mrs. Roberson testified that the man "that didn't have the gun" asked her if she had a weapon and where her telephone was located. She stated that, when she told him that she didn't have a gun or telephone, he went in the back part of the store and looked around then came back and picked up fourteen packs of "Kool" cigarettes. Mrs. Roberson testified that the two men started for the door then "the one with the gun" turned around and stated, "We will be back, . . . [b]y God, you better have more money." The witness stated that as the two men were leaving, another black male, whom she positively identified as appellant, entered the store, walked over to the cooler, removed a six pack of beer, then instructed her to place the beer in a sack. Mrs. Roberson testified that the three men then went outside and drove away in a white automobile with blue doors. She further testified that as they were leaving the store "one of them" turned and said, "Don't stick your head out the door. I'll blow it off. You're not going to get the tag number." The witness stated that after the three men had left she locked the door and called her "bossman" and the police. She added that $114.80, fourteen packs of cigarettes, and a six pack of beer were taken during the robbery.
Officer John Pressley of the Montgomery Police Department testified that he was on patrol around 3:00 PM the day of November 18, 1976, and received a radio dispatch to be on the look-out for a late model Plymouth with blue or black doors. Officer Pressley stated he spotted an automobile on *38 Virginia Loop Road near the Troy Highway which fitted that description and that three black males were riding therein. Officer Pressley testified that he stopped the car, removed the suspects, and looked inside the vehicle where he observed a large quantity of cigarettes, several beers, and "what appeared to be a barrel sticking out from under the passenger side of the vehicle." Officer Pressley stated that he retrieved two shotguns from beneath the seat, a .410 sawed-off shotgun and a double barrel twelve gauge sawed-off shotgun. He further stated that the occupants of the automobile were identified as the appellant, Archie Perdue, and Roosevelt Turner.
Appellant did not offer any evidence in his behalf.

I
On this appeal, appellant urges that the trial court erred in allowing the State to introduce evidence of a separate, distinct, and independent offense which occurred five days subsequent to the offense for which he was charged in the indictment.
It is an elementary rule of law that in a criminal prosecution proof of collateral offenses cannot be used as substantive evidence to establish the guilt of the accused as to the crime for which he stands charged in the indictment. However, this well-established principle of criminal evidence is subject to several equally well-established exceptions. Wilkins v. State, 29 Ala.App. 349, 197 So. 75; Mason v. State, 259 Ala. 438, 66 So.2d 557. These recognized exceptions have developed into general categories, and are listed in Wharton's Criminal Evidence, Section 31, as follows:
"These exceptions fall under the following general divisions: (1) Relevancy as part of res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter, or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes. It is recognized that in many instances the line of demarcation is not clear, but the discretion vested in the trial judge, intelligently and considerately exercised, will enable the prosecution fully to present the charge, on the one hand, and, on the other hand, to protect the accused and secure to him the rights guaranteed to him by the Constitution and the laws."
The State maintains that the robbery of Becky Roberson at Wiggins Grocery was relevant and competent for the purpose of proving the identity of appellant, and it appears in the record that the trial judge based his ruling on the "identity exception" and instructed the jury in his oral charge to only consider the evidence concerning the robbery of Becky Roberson "for the strict purpose of [appellant's] identity."
The issue here presented was dealt with by our Supreme Court in the recent case of Williams v. State, 350 So.2d 708. Justice Faulkner speaking for the Court framed and answered the issue as follows:
"The issue presented is, does a plea of not guilty, where the defendant offers no other defense, and where the witness made a positive identification based upon her observation of defendant at the first robbery, place his identity in issue, so as to justify admission of a separate and distinct subsequent offense. The answer is no. Admission of evidence of the subsequent robbery is reversible error." (Emphasis supplied.)
In the instant case, appellant entered a plea of not guilty, presented no defense, and was positively identified by the victim as the sole perpetrator of the robbery.
Therefore under the authority of Williams v. State, supra, we are constrained to hold that the trial court erred in admitting evidence concerning the subsequent robbery for the purpose of proving identity where that issue was clearly established by direct and competent evidence. See: Boggs v. State, 268 Ala. 358, 106 So.2d 263.
We pretermit discussion of the other assertion of error raised by appellant as it will not likely reoccur in event of a new trial.
*39 For the error noted, the judgment is reversed and the cause remanded.
Reversed and remanded.
HARRIS, BOOKOUT and BOWEN, JJ., concur.
DeCARLO, J., dissents.
DeCARLO, Judge, dissenting.
The Supreme Court in Williams v. State, 350 So.2d 708, held that the admission of evidence of a subsequent robbery did not fall within the identity exception to the general exclusionary rule as outlined in Mason v. State, supra.
In that opinion, the court disagreed with the State's contention that presentation of evidence concerning a subsequent robbery fell within the identity exception. The court said that the manner in which the defendant committed the offense was not "so unique or unusual as to operate as a mark or identification in itself." The court went on to say that the facts of the Williams case did not show any "novel or extraordinary means" employed during the commission of the robberies, and for that reason, the identity exception did not apply.
The Supreme Court of Alabama in Williams v. State, supra, did not remove the "identity exception."
The case we have for consideration can be distinguished from Williams v. State, supra, for the following reasons: (1), There were two victims, Sheila Northington and her brother-in-law: (2), One victim [Sheila Northington], was injured during the robbery: (3), More than one person perpetrated the robbery: (4), The trial court ruled that the subsequent robbery of Becky Roberson at Wiggins Grocery was relevant and competent for the purpose of proving identity: (5), The jury was admonished that the evidence was to be considered only "for the strict purpose of [appellant's] identity," and; (6), There were facts present which demonstrated "novel or extraordinary means employed during the commissions of the robberies."
In distinguishing the facts of Williams v. State, supra, from those cited above from the case at bar, we note the following facts from Williams: (1) There was only one victim: (2) The appellant was the sole perpetrator of the robbery: (3) No novel or extraordinary means were employed during the commission of the offense and: (4) There was no admonishment by the trial judge instructing the jury as to the purpose of the evidence of the subsequent robbery.
Turning to the question of whether or not the facts in the present case demonstrate that the robbery was perpetrated in a unique or unusual manner so that it operates as a mark of identification in itself, the following facts should be considered. In the robbery of the Northingtons, Thomas Northington was the first to be accosted by the robber:
(1) The appellant first asked for a six-pack of beer.
(2) He was armed with a 410 gauge sawed off shotgun.
(3) Northington was told to "give me your money and don't look at me," and;
(4) Prior to the robbery, Northington saw a white automobile pull into the station.
After locking Thomas Northington in a cooler, the appellant went into the store to rob Sheila Northington:
(1) The appellant was accompanied by another male.
(2) The man with the appellant asked for a pack of "Kool cigarettes."
(3) A sawed off shotgun was used.
(4) Mrs. Northington was told to "give me all your money."
In the subsequent robbery of Mrs. Roberson at Wiggins Grocery, there are facts which illustrate the novel and extraordinary means employed during the robbery. These operate as a mark of identification and are as follows:
(1) Three black males were involved.
(2) A twelve gauge shotgun was used.
(3) The victim was told to "give me your money."
*40 (4) Fourteen packages of "Kool cigarettes" were taken.
(5) The appellant took a six-pack of beer.
(6) The trio escaped in a white automobile with blue doors.
Therefore, the apparent similarities in these cases which demonstrate the novel and extraordinary means used are:
(1) More than one person perpetrated each robbery. Mrs. Roberson identified the appellant as one of the three black males who robbed her at Wiggins Grocery. Mr. Northington and Sheila identified the appellant as one of the black males involved in the robbery of their station.
(2) In both robberies the men either asked for or took beer and "Kool" cigarettes.
(3) Shotguns were used in each robbery, and:
(4) The car used in each robbery was described as being white.
In my judgment it is clear that the appellant was one of the persons who committed the robbery at the Northington's service station and at Wiggins Grocery. The facts outlined above indicate the novel and peculiar manner in which the two robberies were committed. This evidence went far beyond any tendency to show the appellant's propensity for committing the same type of crime. It operated as a mark of identification and came within the purview of the identity exception outlined in Mason v. State, supra. Under these circumstances, the trial court was correct in permitting this evidence to go to the jury under proper instructions.
For these reasons, I respectfully dissent.