528 So.2d 343 (1986)
Sarah Nell ROBINSON
v.
STATE.
1 Div. 53.
Court of Criminal Appeals of Alabama.
October 14, 1986.
Rehearing Denied February 18, 1988.
Certiorari Denied July 1, 1988.
*344 Stephen M. Gudac, Mobile, for appellant.
Charles A. Graddick, Atty. Gen., and Gerrilyn V. Grant, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 87-663.
McMILLAN, Judge.
The appellant, Sarah Nell Robinson, was found guilty of the murder of her husband and was sentenced to ten years' imprisonment.
Officer James Graham, of the Chickasaw Police Department, testified that he investigated the homicide at the appellant's residence wherein he found the victim, Mr. Copeland, shot through the neck and lying in bed with a .22 revolver on the floor beside the bed. During the investigation of the house, the possibility of burglary was raised when Officer Graham found the kitchen window screen with a cut in it lying on the counter and a pair of scissors nearby. However, he further testified that there was no evidence that anyone had come through the window, because the dust and medicine bottles on the window sill were undisturbed and, further, there were no footprints outside of the window.
*345 The victim's sister-in-law, a nurse, testified that she was called by the appellant on the day of the murder and she stated that upon her arrival at the house she found the appellant to be very composed. Officer Graham also testified that the appellant appeared extremely calm and showed no emotion. However, the sister-in-law testified that later the appellant asked her for a nerve pill and that when she looked in the appellant's purse, she observed some bullets. She also testified that the appellant was having financial problems with her beauty shop and that she had told her that she believed her husband was being unfaithful and wanted to borrow a wig and glasses to follow him.
Chief Hollinhead, of the Chickasaw Police Department, testified that as a result of his investigation, he believed that there was no burglary of the appellant's home. He found a screwdriver on top of a chest in the appellant's bedroom which appeared to have been used to remove the screen in the kitchen window. Chief Hollinhead also testified that he had received a complaint of a robbery of the appellant's business filed by her in 1977, and that he later found out that the robbery had been faked. In her statement, the appellant admitted to faking this robbery and shooting herself. Chief Hollinhead stated that a few months before the murder, there was also a complaint of an attempted burglary at the appellant's residence.
Sergeant Jack Creekmore testified that he had investigated a burglary complaint at the appellant's residence which was filed by her in 1979. He stated that in his opinion there was no burglary at the appellant's residence; however, she reported that a set of ladies' wedding rings and $100 in cash had been stolen.
The appellant's half-sister identified an engagement ring which she had been given by the appellant's mother as the ring which had been reported stolen in the 1979 burglary. She further testified that the appellant had told her that she was having financial and marital difficulties.
In her statement made to the police after being advised of her Miranda rights, the appellant admitted faking the robbery of her business, as previously noted, and also admitted that she had been having marital problems and had in her possession both a .22 and a .38 caliber pistol prior to her husband's murder. She also admitted to a similarity between the ring she reported stolen and the ring that was in the possession of the authorities.

I
The appellant contends that the trial court erred in denying her motion for continuance, which was predicated on the State's failure to make timely discovery or, in the alternative, whether such failure mandated a new trial. The appellant claims that, pursuant to the discovery order, the State failed to disclose numerous statements allegedly made by the defendant to various police officers, a written transcript of the statement made by the victim's daughter, which was never admitted into evidence, and the ring which had allegedly been stolen in the 1979 burglary.
In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held, that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196-97, 10 L.Ed.2d at 218. "`A fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.' United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976)." Parker v. State, 482 So.2d 1336 at 1340 (Ala.Cr.App.1985). Thus, where the prosecutor fails to disclose evidence, regardless of its admissibility or its trustsworthiness, the crucial question is whether the non-disclosure might have affected the outcome of the trial. State v. Kimberly, 463 So.2d 1106, 1108 (Ala.Cr.App.1984), rev'd, Ex parte Kimberly, 463 So.2d 1109 (Ala.1984). "[T]he omission must be evaluated in the context of the entire record. If *346 there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." United States v. Agurs, supra, 427 U.S. at 112-13, 96 S.Ct. at 2401-02, 49 L.Ed.2d at 349. "`The principle of Mooney v. Holohan, [294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935),] is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused.' Brady, 373 U.S. at 87, 83 S.Ct. at 1197." State v. Kimberly, supra, at 1108-09. The materiality of non-disclosed evidence is determined under the following analysis: where the non-disclosed evidence was specifically requested, a new trial should be granted if the non-disclosure could have affected the trial's outcome and, where the request was merely for exculpatory material or no request was made, the conviction should be reversed if the non-disclosed evidence would create a reasonable doubt that did not otherwise exist. McMullin v. State, 442 So.2d 155, 157-8 (Ala.Cr.App. 1983). "This does not mean, however, that the rules will be enforced blindly; the trial judge has some discretionary power to grant relief for violation of discovery rules: `Non-compliance. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection; grant a continuance if requested by the aggrieved party; prohibit the party from introducing evidence not disclosed; or enter such other order as the court deems just under the circumstances.' Temp. Rule 18.5(a), A.R. Crim.P." Young v. State, 494 So.2d 862 (Ala.Cr.App.1986). Thus, the statement made by the victim's daughter, which the State sought to introduce into evidence, was held inadmissible by the trial court.
In the present case, the appellant's claim concerning the non-disclosure of statements made to the investigating officers was based on the timeliness of the discovery. The appellant was provided with copies of the officer's statement the Friday before trial. The appellant provides no evidence that the untimeliness of the State's compliance prejudiced her case. Moreover, this court has found that even if the State failed to comply with an order for discovery, the items may still be admissible because the State offered the defense counsel an opportunity to inspect and examine them in accordance with Rule 18.5(a), Alabama Temporary Rules of Criminal Procedure. Clemons v. State, 491 So.2d 1060 (Ala.Cr.App.1986). As to the statement made by the victim's daughter, neither has the appellant proved that it would have raised a reasonable doubt concerning her guilt, nor has she proven that the State suppressed the evidence, as the defense counsel was present during the making of the statement. Hurst v. State, 469 So.2d 720, 723 (Ala.Cr.App.1985). Furthermore, non-disclosure of the statement would not have affected the outcome of the trial. United States v. Agurs, supra, 427 U.S. at 104, 96 S.Ct. at 2397. The ring was also not so material that it would have affected the outcome of the case.
"Lastly, the decision as to whether to grant a mistrial is within the sound discretion of the trial judge. Wright v. State, 421 So.2d 1324 (Ala.Cr.App.1982)." Poole v. State, 430 So.2d 894, 896 (Ala.Cr.App. 1983). "Under the circumstances presented in the record, we find no abuse of discretion inasmuch as defense counsel has not demonstrated prejudice by the tardy disclosure and because it would not have affected the outcome of the trial. Ex parte Duncan, 456 So.2d 362, 364 (Ala.1984); Hurst v. State, 469 So.2d 720, 723 (Ala.Cr. App.1985)." Barrow & Barrow v. State, 494 So.2d 834 (Ala.Cr.App.1986).
The appellant argues that the trial court erred in admitting into evidence a diamond ring that was allegedly not disclosed by the State. The appellant's argument that the State violated the discovery order by failing to produce the ring for the appellant's inspection, has already been discussed. Neither was the ring exculpatory evidence for the appellant, nor was the ring so material *347 that it might have affected the outcome of the trial.

II
The appellant contends that the trial court erred in allowing into evidence testimony concerning a burglary alleged to have been staged by her in 1979. "`On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question.'" Pope v. State, 365 So.2d 369, 371 (Ala.Cr.App.1978), quoting C. Gamble, McElroy's Alabama Evidence § 69.01. (3d ed. 1977) "`This exclusionary rule is simply an application of the character rule which forbids the State to prove the accused's bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.'" Ex parte Arthur, 472 So.2d 665, 668 (Ala.1985), quoting McElroy's supra, § 69.01(1). Thus, the exclusionary rule serves to protect the defendant's right to a fair trial. "`The jury's determination of guilt or innocence should be based on evidence relevant to the crime charged.'" Ex parte Cofer, 440 So.2d 1121, 1123 (Ala.1983); Terrell v. State, 397 So.2d 232, 234 (Ala.Cr.App.1981), cert. denied, 397 So.2d 235 (Ala.1981); United States v. Turquitt, 557 F.2d 464, 468 (5th Cir.1977).
"If the defendant's commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than by showing of bad character, then proof of such other act is admissible." Saffold v. State, 494 So.2d 164 (Ala.Cr.App.1986). The well-established exceptions to the exclusionary rule include: (1) relevancy to prove identity; (2) relevancy to prove res gestae; (3) relevancy to prove scienter; (4) relevancy to prove intent; (5) relevancy to show motive; (6) relevancy to prove system; (7) relevancy to prove malice; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes. Willis v. State, 449 So.2d 1258, 1260 (Ala. Cr.App.1984); Scott v. State, 353 So.2d 36 (Ala.Cr.App.1977). However, the fact that evidence of a prior bad act may fit into one of these exceptions will not alone justify its admission. "`Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government's case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudical effects.'" Averette v. State, 469 So.2d 1371, 1374 (Ala.Cr.App. 1985), quoting United States v. Turquitt, supra, at 468-69. "`"Prejudicial" is used in this phrase to limit the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial.' [Citation omitted.] `Of course, "prejudice, in this context, means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contention; but that cannot be ground for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one."'" Averette v. State, supra, at 1374.
In the present case, the evidence of the alleged prior burglary may be admissible under three of the exceptions: relevancy to show motive or relevancy to show system.
In the case sub judice, the State's evidence clearly showed that the appellant was in great financial difficulty, as she was during the time of the alleged prior robbery. *348 Her financial problems would appear to have been the motive behind her alleged "faking" of the prior burglary. The State's evidence also showed that, as a result of her husband's death, the appellant acquired a large sum of money from oil leases, as well as control over the property that was owned by her husband and herself jointly with the right of survivorship. "Both federal and state courts frequently admit evidence of collateral crimes or acts to prove that the accused had a motive to commit the crime charged. The Fifth Circuit has allowed evidence of a defendant's lack of funds as providing a motive for robbery, [Gill v. United States, 285 F.2d 711, 713 (5th Cir.1961), cert. denied, 373 U.S. 944, 83 S.Ct. 1554, 10 L.Ed.2d 699 (1963)], and in a recent case, the Ninth Circuit allowed evidence of heroin use as showing a need for money and thus a motive to commit a robbery. In Alabama, evidence that a defendant who was on trial for murder had just committed an armed robbery was admissible to show that the defendant shot a police officer in order to save himself and his accomplice from punishment. [Vincent v. State, 231 Ala. 657, 660, 165 So. 844, 846 (1936).] In McGuire v. State, [401 So.2d 142 (Ala.Cr.App.1981) ], the court admitted evidence that the defendant had once said that he had robbed a particular person and his prosecution for murdering that person because it tended to show defendant's motive in killing the victim was to rob him of drugs." Schroeder, Evidentiary Use In Criminal Cases of Collateral Crimes and Acts: A Comparison of the Federal Rules and Alabama Law, 35 Ala.L.Rev. 241, 259 (1984).
"Another exception is relevancy to prove plan, design, scheme, or system. Also we find in McElroy's at § 69.01(6); `Evidence of the accused's commission of another crime is admissible if such evidence, considered with other evidence in the case, warrants a finding that both the now-charged and such other crime were committed in keeping with or pursuant to a single plan, design, scheme or system. This rule is applicable whether such plan, design, scheme or system is narrow and specific in scope or is measureably broad and general in scope.'" Saffold v. State, supra (wherein evidence of fraudulent transactions which were similar in nature were admitted to show plan in the theft of property case); Dowdell v. State, 480 So.2d 45, 48 (Ala.Cr.App.1985) (wherein previous similar bad acts in other counties were admitted to prove purpose or plan in the events of knowingly exerting unauthorized control over or obtaining, by deception, property). "In order for evidence of the two crimes to fall within the `plan, scheme, or design' exception, there must be proof `... of a working plan operating towards the future with such force as to render probable both the act and the accompanying state of mind.' 2 Wigmore, Evidence § 300 (Chadbourn Rev.1979). In addition, the crimes, to fall within this exception, should contain `... such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' 2 Wigmore, Evidence § 304 (Chadourn Rev.1979)." Royal v. State, 447 So.2d 834, 836 (Ala.Cr.App.1983). Therefore, there must be "`not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.'" Brewer v. State, 440 So.2d 1155, 1161 (Ala. Cr.App.1983), quoting 2 Wigmore, Evidence § 304 (Chadbourne rev. 1979). It is of no consequence that the prior crime was that of burglary whereas the appellant is currently being tried for murder. Where the appellant was being tried for rape in the first degree, and prior crimes of burglary were admitted in order to show plan and scheme, this court found that "`It is not necessary that the criminal acts in question be the same. Crimes entirely dissimilar... may in fact be sufficiently connected... to warrant their admissibility.' 1 Wharton's Criminal Evidence § 248 (C. Torcia 13th ed. 1972)." Royal v. State, supra, at 836. Just as an accused's previous effort to burn a building was held admissible in an arson charge under the design and motive exceptions to the general *349 exclusionary rule, Franklin v. State, 502 So.2d 821 (Ala.Cr.App.1986), evidence of the appellant's previous attempts to stage a burglary was clearly admissible under the motive and design exceptions to the general exclusionary rule.

III
The appellant contends that the evidence presented by the State is insufficient to support the verdict. However, the record shows that the victim was shot in the neck with a .22 revolver and that a .22 revolver was registered in the appellant's name. Further, there was evidence that the appellant was having financial problems as well as marital problems. She maintained that a burglary had transpired and that perhaps a burglar shot her husband; however, the police could find no evidence of such a burglary having taken place. A screwdriver with brass filings on the blade consistent with those around the window was found in the appellant's bedroom. The appellant also admitted having faked a robbery at her place of business, and there were indications that she had faked a burglary just prior to the murder, as a ring which was allegedly stolen in that burglary was later recovered in the possession of the appellant's mother. Subsequent to her husband's death, all the property jointly owned by the victim and the appellant vested in the appellant, and she received a check for several thousand dollars from oil leases which were part of the victim's estate.
Although the appellant argues that the State's evidence is circumstantial, this court has held that circumstantial evidence is not inferior evidence. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). Further, as long as the circumstantial evidence points to the guilt of the accused, it will support a conviction as strongly as direct evidence. Kelsoe v. State, 356 So.2d 735 (Ala.Cr.App.1978); Agee v. State, 470 So.2d 1331 (Ala.Cr.App.1985). "Circumstantial evidence may afford satisfactory proof of the corpus delicti in a murder prosecution and, if facts are presented from which the jury may reasonably infer that the crime has been committed, the question must be submitted to the jury. Hopson v. State, 352 So.2d 500, 502 (Ala.Cr.App.), aff'd, 352 So.2d 506 (Ala.1977)." Cumbo v. State, 368 So.2d 871, 875 (Ala.Cr.App.1979). In determining the weight of the evidence, this court will not substitute its judgment for that of the jury. Walker v. State, 416 So.2d 1083, 1089 (Ala.Cr.App.1982); Cumbo v. State, supra.
AFFIRMED.
All the Judges concur.

ON APPLICATION FOR REHEARING
McMILLAN, Judge.
The appellant alleges on rehearing that the trial court erred in denying her motion for continuance because the State failed to timely disclose a statement made by the victim's other daughter, Darlene Volking Copeland. The record indicates that Darlene Volking Copeland was called to the stand by the defense, but the trial court ruled that she could not be asked any incriminating questions. On cross-examination, the State attempted to admit into evidence a statement which she had previously made to the police. The trial court held that the statement was not admissible, because there was no showing that she had been read her Miranda rights or that the statement was voluntarily given. The State responded that there was no evidence in the statement which would incriminate her, nor was the prosecutor's purpose to bring out any information to incriminate Darlene Volking Copeland. Rather, the prosecutor explained that he only wished to use the statement for impeachment purposes if the witness were to change her story. The trial court ruled that such a use would be proper. Thereafter, the defense counsel objected to the prosecutor's nondisclosure of the statement, stating that the defense had first seen the statement on the previous day and felt that despite some discrepancies between the statement in question and that of the appellant, it did contain exculpatory material; apparently the exculpatory evidence being that the daughter stated that her mother (the appellant) *350 was upset and said that the father had been shot.
That evidence would not have changed the outcome of the trial, United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), nor did it create a reasonable doubt that did not otherwise exist. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Further, the evidence was made available to the defense during the trial and while the witness was available for impeachment. See Tarvin v. State, 527 So.2d 752 (Ala.Cr.App. 1986). Lastly, the trial court allowed the statement to be "marked into evidence" but ruled that it was inadmissible. This court has held that in order for exculpatory evidence to be material, it must be admissible. See Smitherman v. State, 521 So.2d 1050 (Ala.Cr.App.1987) for a full discussion. For these reasons, we conclude that the trial court acted properly in denying the appellant's motion.
OPINION EXTENDED; APPLICATION OVERRULED; MOTION DENIED.
All the Judges concur.