Rel: June 28, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

———————————————

## CR-2023-0543

———————————————

## Toney R. Harvell

### v.

## City of Huntsville

## Appeal from Madison Circuit Court
## (CC-22-3363)

MINOR, Judge.

The City of Huntsville Municipal Court found Toney R. Harvell guilty of driving under the influence of alcohol, see § 32-5A-191(a)(2), Ala. Code 1975, and Harvell appealed to the Madison Circuit Court for a trial de novo. A jury found Harvell guilty, and the circuit court sentenced him

to serve 365 days in jail. This appeal asks us to consider whether the circuit court erred when it admitted evidence of Harvell's prior arrest and conviction for driving under the influence of alcohol ("DUI"). For the reasons below, we hold that the circuit court erred and that the error was not harmless. Thus, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Because Harvell does not dispute the facts and does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary. The City's only witness at trial, Officer Donald Woody of the Huntsville Police Department ("HPD"), testified as an expert in DUI detection. Off. Woody, who was a member of HPD's DUI Task Force when he arrested Harvell, stated that he had undergone "in-depth training as to recognizing anybody that might be under the influence of" alcohol or controlled substances (R. 103) and explained that a person who is in physical control of a vehicle need only exhibit "clues" that he is unable to safely operate a vehicle to be charged with DUI.

In September 2021, Off. Woody responded to Roadside Towing Company's impounding facility after a clerk smelled alcohol on Harvell's breath when Harvell came to retrieve his vehicle. Off. Woody followed a

2

tow-truck driver to the area where Harvell's Chrysler Pacifica minivan was parked. As Off. Woody approached, he saw Harvell drive the Pacifica a short distance forward out of a parking space and then reverse the Pacifica into the parking space. Off. Woody exited his patrol vehicle, walked up the passenger side of the Pacifica, and opened the front passenger door. Off. Woody testified:

> "When I looked inside the vehicle the first thing I noticed is upon him speaking I could smell an odor of alcoholic beverage coming from his breath. I observed it was a—the top was on the bottle, but it was a half empty bottle of vodka on the passenger's side. I could observe in his eyes that they were glazed, bloodshot, and he seemed to be slow in his speech."

(R. 110.) Other officers at the scene had Harvell exit the Pacifica and walk over to a patrol car. Harvell had trouble walking, and he leaned against the front bumper of the patrol car, which indicated to Off. Woody that Harvell was "not comfortable with standing straight at the moment" because, Off. Woody said, "usually people don't like to lean on our vehicles." (R. 114.) Off. Woody explained to Harvell that he was a DUI specialist who was there to determine whether Harvell was safe to drive.

Off. Woody asked Harvell whether he had ever taken a field-sobriety test and whether he had ever been arrested for DUI, and Harvell

3

replied yes to both questions. Off. Woody asked Harvell several times if he would take a field-sobriety test, but Harvell deflected by asking if someone else could drive his car and stating that he had cataracts, dry eyes, and injuries to his feet that prevented him from taking the test. Off. Woody testified:

> "Due to the clues I witnessed, due to the clues I observed from the initial contact, watching him walk, listening to him speak, watching him attempt to stand up straight, looking at his eyes, I came to the conclusion that he was, in fact, too impaired to be behind the wheel and that's when I decided to place him under arrest for DUI."

(R. 116-17.) At the jail, Harvell made a statement to Off. Woody about the Draeger breathalyzer test.[1] Off. Woody testified that Harvell "stated that it didn't take into account 30 years of drinking; that the last time that he blew in one it was a .20." (R. 118.)

On redirect examination, the circuit court admitted, over Harvell's objection, Off. Woody's body-camera footage as City's Exhibit 2. The City played the video for the jury, which depicted the events Off. Woody

---

[1]Off. Woody explained that the Draeger breathalyzer test "is the system that's inside the jail that's much more complicated than the little small handheld ones that you've seen on the street. These ones are one that give an exact blood alcohol level of somebody." (R. 118.)

testified to on direct examination and showed the following pertinent statements:

> "Off. Woody: Have you ever gone through a DUI test or anything like that?
>
> "Harvell: (Nodding) I have, sir.
>
> "Off. Woody: Have you ever been charged with DUI?
>
> "Harvell:  Yes, sir, I have.
>
> "Off. Woody: When's the last time?
>
> "Harvell: I was convicted 13 years ago.
>
> "….
>
> "Off. Woody: Same test you did when you went through your DUI a while back.  It ain't changed."

(City's Ex. 2.)[2]

After Off. Woody's testimony ended, the parties rested, and the circuit court gave its oral charge to the jury.  The jury found Harvell guilty of driving under the influence of alcohol, and the circuit court sentenced Harvell to serve 365 days in the Madison County Jail.  Harvell timely appealed.

---

[2]This Court has viewed the body-camera footage admitted as City's Exhibit 2.  The video does not contain Harvell's statement to Off. Woody made at the jail.

5

DISCUSSION

Harvell contends that the circuit court abused its discretion when it admitted evidence of his prior arrest and conviction for DUI. He challenges (1) comments the City made during its opening statements; (2) Off. Woody's testimony about Harvell's statements made at the scene and at the jail; and (3) Harvell's statements shown on Off. Woody's body-camera video. He argues that such evidence was inadmissible evidence of bad character and that it was prejudicial.

Before his trial in the circuit court, Harvell moved in limine to exclude evidence of his prior arrests and convictions for DUI, arguing that such evidence was inadmissible under Rule 404(b)(1), Ala. R. Evid.,[3] and that it was prejudicial. Harvell also moved to suppress statements he made to police after he was arrested, arguing that an "interrogation took place during a time when [Harvell] was not and had not been advised of [his] constitutional rights pursuant to Miranda v. Arizona.[4]" (C. 27.)

---

[3]Rule 404(b)(1), Ala. R. Evid., provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

[4]Miranda v. Arizona, 384 U.S. 436 (1966).

The circuit court held a pretrial hearing on Harvell's motions. As to the motion in limine, the City stated that, unless Harvell testified, it would not introduce evidence of Harvell's "approximately 14 prior arrests and/or convictions" for DUI. (R. 5.) Harvell responded, however, that the City intended to introduce Off. Woody's body-camera video taken at the scene that mentioned his prior DUI arrests and convictions. The City asserted that it would not introduce a record of Harvell's DUI arrests or convictions and that its purpose in introducing the body-camera video was to show that Harvell made statements that he had taken field-sobriety and breath tests before and that he had been arrested for DUI in the past. Harvell argued that his statements were made in response to Off. Woody's questions and were inadmissible character evidence.

As to the motion to suppress, Harvell argued that any statements he made at the police station were inadmissible because "he positively wasn't Mirandized and he was under arrest at that point." (R. 7.) The City explained that it intended to offer evidence showing that, while Off. Woody was explaining the Draeger breathalyzer test and asking Harvell if he would take the test, Harvell made "a spontaneous statement that— something to the effect of, 'This test doesn't take into account people that

7

have drank alcohol for 30 years like I have. And the last time I took it, it was a .20.'" (R. 8.) Harvell reiterated that he had not been advised of his <u>Miranda</u> rights and argued that the statement was inadmissible character evidence. The circuit court ruled that Harvell's statements at the scene and at the police station were admissible.

The circuit court and the parties then watched the body-camera video, after which Harvell objected to "[t]he statement the officer makes towards the end where he says, It's just like the DUI test you took before." (R. 17.) The circuit court responded that Harvell had

> "already admitted previously that he had had a conviction which could be relevant or could show that he had taken the test before. But if we can figure out a way to take that out— I think it can come in. So if it inadvertently comes in I'm not going to declare a mistrial. But if there's a way to take it out then we'll try to take it out."

(R. 17-18.)

Harvell made these objections during the City's opening statements:

> "[THE CITY]: You're also going to hear him make some statements. He's going to talk about having been arrested for a prior DUI. Makes a statement about being convicted of a DUI before.
>
> "[DEFENSE COUNSEL]: Your Honor, I'll just go ahead and enter an objection. That would be [Rule] 404(b) and

8

609(b)[5] evidence which the City has not complied with the local rule. We would object.

"THE COURT: All right. Overruled. And we'll move forward. Okay. Noted for the record.

"....

"[THE CITY]: And there's no—no breath test. All right. The defendant refuses to take a breath test. That's fine. That's within his right. But during the course of that he does make a statement. You're going to hear that from Officer [W]oody. That, basically, these tests don't take into account somebody that has a tolerance based on over 30 years of drinking alcohol. And that last time I took it I was a .20—

"[DEFENSE COUNSEL]: Objection as to bad character evidence, Your Honor.

"THE COURT: Overruled. It's been previously ruled on by the Court as all the other issues beforehand. Overruled. Noted for the record."

(R. 86-88.)

After opening statements, the following discussion occurred outside

the presence of the jury:

"THE COURT: [Defense counsel] has made an argument that under [Rule] 404(b) and 609 the City of Huntsville has failed to provide notice of [Harvell's] prior conviction for DUI.

---

[5]Rule 609(b), Ala. R. Evid., provides that "evidence of a conviction, more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

9

"[DEFENSE COUNSEL]:  Yeah.

"THE COURT:  Ms. Blair Dawkins was in this courtroom yesterday on behalf of the City of Huntsville and on previous occasions when [Harvell] was set for trial. Yesterday when this case was announced for trial Ms. Dawkins informed all present that she was required to try a case before …

"….

"Municipal court today and that she would be unavailable and that Mr. Josh Graff would be present.

"In the presence of [defense counsel] and [Harvell] … this Court sat right here and heard Ms. Dawkins discuss the 14 prior arrests of [Harvell] for driving under the influence and/or a number of convictions.

"….

"At that time she discussed not only his arrest record but his prior convictions in the presence of the Court and [defense counsel].  [Defense counsel] just, during opening statements of the City, raised an argument that the City had never provided [Harvell] notice of a prior conviction.

"The Court takes issue with that.  I ruled on your motion during opening statement.  I thought I did it in a very professional way and denied your motion.

"I'm denying your motion again.  If you would like to state anything for the record, feel free to do so.  You may do it at this time.  You're not going to raise it again in front of the jury.  So feel free to state anything you would like on the record here.  But before you do let me ask you—

10

"[DEFENSE COUNSEL]:  Yes, Your Honor.

"THE COURT:  —did you file a written motion for [Rule] 404(b) and 609 evidence requesting same from the City of Huntsville as it relates to the prosecution of this case?

"[DEFENSE COUNSEL]:  No, Your Honor.  Because by order of the court some years ago the court and the Clerk's Office got tired of defense's [Rule] 404(b) and 609 motions and said that there was a duty upon the prosecuting authority to provide this information to the defense.

"THE COURT: Whether it was requested or not?

"[DEFENSE COUNSEL]:  Correct.

"THE COURT:  Is that an order in this case?

"[DEFENSE COUNSEL]:  Your Honor, as I understood it, it was with the circuit court as a whole which is why we haven't filed any of those motions in some time.  But we can start again.

"But the simple fact is she's reading from an NCIC sheet that I don't know if it's correct.  I have been provided no written notice.  I provided—the only discovery I've been given is the incident report.  I've been given the body cam.  I haven't been given the [Form] AST-60.  We don't know where it is.  But one thing I haven't been given is the specifics of when [Harvell] was charged, if he had counsel in the resolution.  And I would say that under those rules the City is under a duty because they're basically playing character assassination when he's not even taking the stand so you can't call it impeachment.

"THE COURT:  And he himself voluntarily offered the information that he had been previously convicted of a DUI; is that correct?

11

"[DEFENSE COUNSEL]: In response to a question, yes, ma'am.

"THE COURT: Is that correct?  So are you asking them to tell you which conviction he was referencing?

"….

"[DEFENSE COUNSEL]:  I think the number 13 was used.  And, as a result, it's outside the period of time to where it cannot be used.  There's a 10-year cutoff under the Alabama Rules of Evidence of priors that can be used.  And if it's over 10 I don't think the City can use it at all.

"THE COURT: All right.  Any response thereto?

"[THE CITY]: Just that to say that this is where I as the prosecution going to admit his prior record is not the case here.  These are statements that he made during the course of an investigation.

"He had the right not to answer those questions; he did.  They're statements made by [Harvell].  We can call them voluntary statements.  We can call them excited utterances.  The City ourselves are not putting his record into question.  He put it into question by answering the question.

"So all we're asking the Court is to allow statements made by [Harvell] to be entered on the—into the record.

"THE COURT:  Which I did and I ruled on this probably a couple of hours ago.  So this matter has now been preserved for appellate review and I don't anticipate or expect to hear it again."

(R. 95-99.)

After a recess, another discussion occurred outside the presence of the jury in which Harvell provided the circuit court with a copy of the standing order about Rules 404(b) and 609, Ala. R. Evid., issued by the judges of the Madison Circuit and District Courts in August 2019.[6] The circuit court admitted the order as Court's Exhibit 1. The circuit court ruled that the City provided sufficient notice to the defense of its intent to use Harvell's prior conviction and that, even if there were not sufficient notice, the City was "not introducing this as [Rule] 404(b) evidence or [Rule] 609 evidence but merely introducing it as a spontaneous

---

[6]Harvell was tried in June 2023. Rule 404(b), Ala. R. Evid., was amended effective May 1, 2023, to provide in part:

> "(3) Notice in a Criminal Case. In a criminal case, the prosecutor must:
>
> "(A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
>
> "(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
>
> "(C) do so in writing before the trial—or in any form during trial if the court, for good cause, excuses lack of pretrial notice."

13

declaration, excited utterance, or statement of the defendant." (R. 100.) Harvell objected and argued that the evidence was inadmissible because, he said, it "would be irrelevant and immaterial to the case-in-chief since it does not support the City's complaint of driving under the influence." (R. 100-01.) The circuit court overruled the objection.

Finally, during closing arguments, the City repeatedly reminded the jury that Harvell had been arrested and convicted of DUI in the past (R. 156, 157, 165); that Harvell had taken field-sobriety and breath tests before (R. 154, 157, 165); and that Harvell had been drinking alcohol for 30 years.[7] (R. 154, 158, 165.)

In his brief, Harvell does not reallege his arguments that the evidence was inadmissible because the City did not provide sufficient notice under Rule 404(b) or 609(b), Ala. R. Evid., or because he had not been advised of his <u>Miranda</u> rights before he made the statement at the jail. Thus, we do not address those arguments on appeal. <u>See</u> Rule 45B, Ala. R. App. P. ("In those criminal cases in which the death penalty has

---

[7]Although Harvell did not object to the City's comments during closing arguments, as noted above, the circuit court ruled earlier that "this matter has now been preserved for appellate review and I don't anticipate or expect to hear it again." (R. 99.)

not been imposed, the Court of Criminal Appeals shall not be obligated to consider questions or issues not presented in briefs on appeal."); Hoppins v. State, 451 So. 2d 365 (Ala. 1983). We now turn to Harvell's arguments that are properly before us on appeal.

> "'"The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion." Ex parte Loggins, 771 So. 2d 1093, 1103 (Ala. 2000). This is equally true with regard to the admission of collateral-bad-acts evidence[, i.e., Rule 404(b) evidence.] See Davis v. State, 740 So. 2d 1115, 1130 (Ala. Crim. App. 1998). See also Irvin v. State, 940 So. 2d 331, 344-46 (Ala. Crim. App. 2005).'"

Anderson v. State, 360 So. 3d 1117, 1120 (Ala. Crim. App. 2022) (quoting Windsor v. State, 110 So. 3d 876, 880 (Ala. Crim. App. 2012)).

Rule 404(b), Ala. R. Evid., provides, in relevant part:

> "(1) Prohibited Uses. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

> "(2) Permitted Uses. This evidence may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[8]

---

[8]As stated in note 6, supra, Rule 404(b), Ala. R. Evid., was amended effective May 1, 2023, and Harvell was tried in June 2023. Rule 404(b) as quoted in this opinion is the version of the rule that became effective on May 1, 2023.

15

In <u>Woodard v. State</u>, 846 So. 2d 1102, 1106-07 (Ala. Crim. App. 2002), this Court stated:

"Evidence of collateral crimes is 'presumptively prejudicial because it could cause the jury to infer that, because the defendant has committed crimes in the past, it is more likely that he committed the particular crime with which he is charged—thus, it draws the jurors' minds away from the main issue.' <u>Ex parte Drinkard</u>, 777 So. 2d 295, 296 (Ala. 2000). In <u>Robinson v. State</u>, 528 So. 2d 343 (Ala. Crim. App. 1986), this Court explained the exclusionary rule as follows:

"'"'On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question.'" <u>Pope v. State</u>, 365 So. 2d 369, 371 (Ala. Cr. App. 1978), quoting C. Gamble, <u>McElroy's Alabama Evidence</u> § 69.01 (3d ed. 1977). "'This exclusionary rule is simply an application of the character rule which forbids the State to prove the accused's bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.'" <u>Ex parte Arthur</u>, 472 So. 2d 665, 668 (Ala. 1985), quoting <u>McElroy's</u> <u>supra</u>, § 69.01(1). Thus, the exclusionary rule serves to

16

protect the defendant's right to a fair trial. "'The jury's determination of guilt or innocence should be based on evidence relevant to the crime charged.'" Ex parte Cofer, 440 So. 2d 1121, 1123 (Ala. 1983); Terrell v. State, 397 So. 2d 232, 234 (Ala. Cr. App. 1981), cert. denied, 397 So. 2d 235 (Ala. 1981); United States v. Turquitt, 557 F.2d 464, 468 (5th Cir. 1977).

"'"If the defendant's commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than by showing of bad character, then proof of such other act is admissible." Saffold v. State, 494 So. 2d 164 (Ala. Cr. App. 1986). The well-established exceptions to the exclusionary rule include: (1) relevancy to prove identity; (2) relevancy to prove res gestae; (3) relevancy to prove scienter; (4) relevancy to prove intent; (5) relevancy to show motive; (6) relevancy to prove system; (7) relevancy to prove malice; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes. Willis v. State, 449 So. 2d 1258, 1260 (Ala. Cr. App. 1984); Scott v. State, 353 So. 2d 36 (Ala. Cr. App. 1977). However, the fact that evidence of a prior bad act may fit into one of these exceptions will not alone justify its admission. "'Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government's case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.'"

17

> *Averette v. State*, 469 So. 2d 1371, 1374 (Ala. Cr. App. 1985), quoting *United States v. Turnquitt*, supra at 468-69. "'"Prejudicial" is used in this phrase to limit the introduction of probative evidence of prior misconduct only when it is <u>unduly</u> and <u>unfairly</u> prejudicial.' [Citation omitted.] 'Of course, "prejudice, in this context, means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contention; but that cannot be ground for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one."'" *Averette v. State*, supra, at 1374.'

"528 So. 2d at 347."

Harvell's statements to Off. Woody at the scene and at the jail constituted evidence of Harvell's other crimes that is prohibited under the general exclusionary rule. The only argument the City made for admitting Harvell's statements was that they showed Harvell had taken a field-sobriety and breathalyzer test before, that he had been arrested and convicted for DUI before, and that the statements were excited utterances and admissions by a party opponent. And the circuit court noted that Harvell's statements "could be relevant or could show that he had taken the test before." (R. 18.) Those reasons, however, do not fall under any exception to the exclusionary rule under Rule 404(b).

18

Contrary to the circuit court's finding, the fact that Harvell's statements were made in response to Off. Woody's questions or were spontaneously declared does not make them admissible under Rule 404(b). Harvell's statements about a prior DUI arrest and conviction were not relevant to, or probative of, any issue in the case; they were collateral to the crime with which Harvell was charged. Thus, we agree with Harvell that his statements referring to his prior DUI history were inadmissible character evidence under Rule 404(b).

And the improper admission of Harvell's statements was not harmless. Rule 45, Ala. R. App. P., provides:

> "No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."

This Court has stated:

> "'In determining whether the admission of improper testimony is reversible error, … the reviewing court must determine whether the "improper admission of the evidence … might have adversely affected the defendant's right to a fair trial," and before the reviewing court can affirm a

judgment based upon the "harmless error" rule, that court must find <u>conclusively</u> that the trial court's error did not affect the <u>outcome</u> of the trial or <u>otherwise prejudice a substantial right of the defendant</u>.'

"<u>Ex parte Crymes</u>, 630 So. 2d 125, 126 (Ala. 1993). 'Whether the improper admission of evidence of collateral bad acts amounts to prejudicial error or harmless error must be decided on the facts of the particular case.' <u>R.D.H. v. State</u>, 775 So. 2d 248, 254 (Ala. Crim. App. 1997)."

<u>Woodard</u>, 846 So. 2d at 1108.

"'The standard for determining whether error is harmless is whether the evidence in error was "harmless beyond a reasonable doubt." <u>Schaut v. State</u>, 551 So. 2d 1135, 1137 (Ala. Crim. App. 1989), citing <u>Chapman v. California</u>, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).'

"<u>Hunter v. State</u>, 802 So. 2d 265, 270 (Ala. Crim. App. 2000). '[T]he harmless error rule excuses the error of admitting inadmissible evidence only [when] the evidence was so innocuous or cumulative that it could not have contributed substantially to the adverse verdict.' <u>Ex parte Baker</u>, 906 So. 2d 277, 284 (Ala. 2004)."

<u>Horton v. State</u>, 217 So. 3d 27, 59 (Ala. Crim. App. 2016).

The evidence here was not overwhelming so as to render admission of Harvell's statements harmless beyond a reasonable doubt. The ultimate issue at trial was whether Harvell was in physical control of a vehicle while under the influence of alcohol to the point that he could not

drive the vehicle in a safe manner. The City's evidence consisted of Off. Woody's testimony and body-camera video taken at the scene. As noted above, Off. Woody, an expert in DUI detection, arrested Harvell for DUI after determining that Harvell was "too impaired to be behind the wheel." (R. 117.) Off. Woody testified that he based his conclusion on the "clues" he observed when interacting with Harvell, such as "watching him walk, listening to him speak, watching him attempt to stand up straight, [and] looking at his eyes." (R. 117.) Off. Woody's body-camera video depicted the events at the scene that Off. Woody testified to on direct examination. And, of course, Off. Woody testified to and his body-camera video contained Harvell's statements that we have found were inadmissible character evidence. The City buttressed its case by emphasizing that evidence during opening statements and closing arguments, even commenting that Harvell refused to take the field-sobriety and breath tests because "[h]e did them before. He got arrested and he's already convicted. He knows what to do and what not to do." (R. 158.)

After the close of the evidence but before closing arguments, a juror asked the circuit court: "I was wondering if—is there other officers who are willing to testify as this officer is as to the situation?" (R. 147.) The

21

circuit court responded, "[Y]ou have all of the testimony and evidence that you are going to receive in this particular case." (R. 148.) After the jury retired for deliberations, the jury had two questions for the circuit court. The jury first asked for "some information from the transcript." (R. 182.) The circuit court informed the jury: "You may not have any information contained in the transcript. The transcript is for court and appellate purposes, if necessary, but not for you to review. You'll just have to recall your independent and collective recollection as to what the testimony was." (R. 182.) The jury next asked for the definition of "the reasonable-person standard," to which the circuit court responded:

> "First of all, the term 'reasonable person standard' was not contained anywhere in the charge of law as it relates to this case. Okay.
>
> "Now, we've talked, I've conferred with the lawyers and we believe that the phrase may have been used in an argument or in some discussion. In all candor, we don't want you to get so caught up in legal terms.
>
> "If you will recall when I defined reasonable doubt, you know, sometimes legal terms cause people to get themselves in a frantic state. But that's not what they're intended to do. Just like the phrase 'reasonable person' or 'reasonable person standard.' What that means is what would an ordinary, reasonable person do under same or similar circumstances? So just what would a reasonable person do? That's reasonable person standard.

22

"But there is no necessary definition in this case of reasonable person standard. And I don't know if that came up as a result of the charge wherein I stated that a person must be able to drive their vehicle in a safe manner. Okay. Maybe that's where that came from. I don't know."

(R. 183-84.) The jury's foreperson stated that he was satisfied with the circuit court's answers and added: "We would also like to continuing [sic] reviewing the video and we should be done after that." (R. 184.) The jury's multiple questions lead us to believe that the improper admission of Harvell's statements might have contributed to the adverse verdict. In other words, we cannot find conclusively that the circuit court's error did not affect the outcome of the trial. Thus, we find that the improper admission of this evidence was not harmless.

## CONCLUSION

After thoroughly reviewing the record, we hold that the improper admission of Harvell's statements could have drawn the jurors' minds away from the main issue, leaving them with the impression that, because Harvell had a history of driving under the influence of alcohol, he must have also committed the DUI for which he was on trial. The circuit court's error was not harmless—it had an unfair prejudicial effect on the jury's deliberations and adversely affected Harvell's substantial

23

rights. Thus, we reverse the judgment of the circuit court and remand Harvell's case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Windom, P.J., and Kellum, McCool, and Cole, JJ., concur.