COBB, Judge.
Based on several indictments, Demarcus Chavers was convicted of three counts of robbery in the first degree, two counts of kidnapping in the first degree, one count of kidnapping the second degree, two counts of rape in the first degree, and four counts of sodomy in the first degree. For all the convictions other than the conviction for kidnapping in the second degree, he was sentenced to life imprisonment; all 11 sentences were to be served consecutively. For the conviction for kidnapping in the second degree, he received a 10-year sentence to be served consecutively with the life sentences. He raises four issues on appeal.
FACTS
Kathleen Maria Moore testified that at approximately 7:15 p.m. on May 29, 1996, Chavers abducted her at gunpoint from a parking lot at the University of South Alabama where she was a student. Moore testified that Chavers threatened to shoot her if she did not return to her automobile. He forced her to get into the driver’s seat of her blue Geo Metro automobile, and he sat in the front passenger seat, pointing the gun at her. Chavers instructed her to follow a white Cadillac that was leaving the parking lot. The Cadillac was being driven by Melvin Smith. Terrence Taylor, George Robinson, and Lee Harris were all in the car with Smith. Those individuals and Chavers had been riding with Smith in his Cadillac before the abduction, carjacking and robbery involving Moore.[1] Smith testified at Chavers’s trial and recounted that he had seen Chavers approach *343 Moore and also recounted the events involving Moore that followed. Chavers ordered Moore to stop at a bank automatic teller machine and withdraw $50. Approximately 30 minutes from the time of the abduction, Chavers ordered Moore out of the car and left with the blue Geo Metro, $50, and her purse.
At approximately 10 p.m. that same evening, J.K. and B.C.,[2] both of whom were 21 years old, drove J.K.’s blue Saturn automobile into a well-lighted parking lot behind “Take Five,” a dance club and bar located on Dauphin Street in downtown Mobile. Two black males approached J.K. and B.C. One male accosted B.C., holding her at gunpoint while both men ordered the girls to “get back in the fucking car.” R. 122. The girls got in the front seats, with J.K. in the driver’s seat. The two black males got into the backseat. J.K. was instructed to drive to a deserted park near the Mobile Infirmary. Both girls unequivocally identified Chavers as the male who sat behind J.K. A Geo Metro, which was later identified as the car stolen from Moore earlier in the evening, followed behind. Two black males were in the Geo Metro.
At the park, the two girls were repeatedly raped and sodomized by four black males. At times during the ordeal, the victims were forced to perform fellatio on one male while a second male was raping them. J.K. testified that one of the males exclaimed, “We’re running a motherfucking train.” R. 131. During one specifically brutal episode, J.K. was taken behind the Geo and told to bend over and grab her ankles. The male then anally sodomized her. At this time she memorized the vehicle’s tag number, which she later gave to the police. The males then took J.K.’s and B.C.’s jewelry. As noted above, both women unequivocally identified Chavers as one of the four males who participated in the sexual assaults.
When the four males had ended their assaults, the man who was holding the gun told the women to walk toward the creek that separated the park from the Mobile Infirmary. The women testified that at some point they started running and that they ended up in a parking lot at the Mobile Infirmary, where they were aided by security personnel. The police were summoned to the crime scene where J.K.’s blue Saturn remained. Evidence was gathered from the scene and rape kits were completed on the victims.
At approximately 8 a.m. the following morning, Officer Eddie James Blakely, of the Prichard Police Department, saw the Geo Metro with the tag number J.K. supplied. Officer Blakely saw George Robinson and Terrance Taylor run from the Geo into a house; B.C.’s stolen jewelry was later discovered in the house. The car was impounded and semen samples were taken from the seats for forensic evaluation.
Ultimately, blood samples were taken from Chavers, George Robinson, Terrance Taylor, and Lee Harris for use in DNA comparisons. Eleven separate tests, comparing DNA in the semen stain found in the Geo with DNA from blood samples taken from Chavers, revealed a positive match. R. A364.[3]
George Robinson, Terrance Taylor, and Lee Harris all gave statements admitting their participation in the crimes.
I.
Chavers contends that the trial court erred in allowing Police Officer Wayne Farmer to testify, over hearsay and Confrontation Clause objections, that each of Chav-ers’s accomplices admitted their guilt to the charged offenses. He argues that he was not being tried with the alleged accomplices and that, therefore, their extrajudicial admissions were hearsay and violated his constitutional right to confront witnesses against him. The State argues that the testimony was properly admitted because it was limited solely to counter impeachment of the victims’ identification of the perpetrators and did not implicate Chavers in any criminal behavior.
The trial court allowed the State to ask Farmer the following question about each accomplice. “Q. Did Terrance Taylor [Lee Harris and George Robinson] indicate that *344 he had taken part in the rape and kidnapping of [B.C.] and [J.K.]?” R. 458-59. Officer Farmer responded “yes” to each question. R. 458-59.
The testimony was hearsay. See Kennard v. State, 531 So.2d 934, 937, (Ala.1986) (on cross-examination defense counsel asked the arresting police officer if an accomplice had admitted to him that he had committed the robbery and the officer answered “yes.”), cert. denied 484 U.S. 861, 108 S.Ct. 176, 98 L.Ed.2d 129 (1987). However, “[t]he admission of hearsay evidence in violation of the accused’s constitutional right of confrontation is not automatically a ground for reversal.” Rouse v. State, 548 So.2d 643, 647 (Ala.Cr.App.1989) (citing Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900)).
“In order for a constitutional error to be deemed harmless under Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)], the state must prove beyond a reasonable doubt that the error did not contribute to the verdict and/or sentence. In order for a nonconstitutional error to be deemed harmless, the appellate court must determine with ‘fair assurance ... that the judgment was not substantially swayed by the error.’ ... In order for the error to be deemed harmless under Ala.R.App.P. 45, the state must establish that the error did not or probably did not injuriously affect the appellant’s substantial rights. ... The purpose of the harmless error rule is to avoid setting aside a conviction or sentence for small errors or defects that have little, if any, likelihood of changing the result of the trial or sentencing.”
Davis v. State, [Ms. CR-93-1364, March 21, 1997] — So.2d - (Ala.Cr.App.1997). Here, the record shows that the evidence of Chavers’s guilt is virtually ironclad; therefore, the testimony did not affect the outcome of the trial or otherwise prejudice his right to a fair trial. Ex parte Greathouse, 624 So.2d 208, 211 (Ala.1993) (“ironclad” evidence of guilt was presented and “it [was] clear beyond a reasonable doubt that the jury would have returned a verdict of guilty had counsel for the codefendant not commented on the defendant’s failure to testify”). In this case, Kathleen Moore and Melvin Smith unequivocally placed Chavers with the accomplices shortly before the crimes were committed, and they identified him as the person who abducted Moore and stole her Geo automobile shortly before the commission of the crimes committed against J.K. and B.C. Further, J.K. and B.C. unequivocally identified Chavers as a participant in all the charged crimes. Eleven separate tests were conducted on semen stains taken from the seat of the Geo, all of which revealed that Chavers was a source of the semen. Specifically, the forensic expert testified that “[flor each and every test that I ran the results were consistent with having originated from both Mr. Chavers and Mr. Robinson.” R. A364.
In view of the above evidence, we conclude that the prejudicial impact of the objected to testimony was slight, and that there is no likelihood that the outcome of the trial would have been different had the trial court sustained the objection to the questions asked of Officer Farmer.
II.
Chavers contends that the trial court erred in overruling his hearsay objection to a police officer’s testimony that the victims had made extrajudicial identifications of Chavers as one of their assailants from a photographic array. Chavers argues that this testimony was inadmissible. He argues that the Alabama Supreme Court, when it adopted the Alabama Rules of Evidence, did not adopt the corresponding federal rule, Rule 801(d)(1)(C) and did not follow Alabama decisions existing before the adoption of those rules that allow an “extrajudicial identification of a perpetrator, related through the testimony of a third party ... to rehabilitate a victim whose in court identification had been challenged on cross-examination.” Appellant’s brief at page 28.
The objected-to testimony was not inadmissible hearsay, because it was not offered to prove the truth of the matter asserted. *345 Rather, the testimony was offered in response to Chavers’s challenge to the reliability of the victims’ identification, to show that the victims’ in-court identification was not fabricated, but was consistent with previous identifications. The challenged testimony was properly admitted under Rule 801(d)(1)(B), Ala.R.Evid. Rule 801(d)(1)(B), Ala.R.Evid., provides:
“A statement is not hearsay if — ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant’s testimony and is offered to rebut an express or implied charge against the declarant or recent fabrication or improper influence or motive.”
C. Gamble, McElroy’s Alabama Evidence § 273.01(2) (5th ed.1996), states:
“Prior identification statements, consistent with an identifying witness’ testimony, may constitute nonhearsay because they are offered, rather than to prove the truth of the matter asserted, to rehabilitate by proof of consistency. When such consistent statements are offered, however, the rehabilitating party encounters a hurdle that lies outside of hearsay law in the area of witness impeachment. This hurdle is formed by the general rule that consistent statements are admissible to rehabilitate a witness only after cross-examination has suggested that the identifying witness has recently fabricated the in-court identification or has experienced an improper influence or developed a motive to falsify the identification. If such a suggestive cross-examination is conducted against the identifying witness then a prior, consistent identification would be nonhearsay under traditional evidence law because, rather than being offered to prove the truth of the extrajudicial identification, it is offered circumstantially to show the witness’ consistency.
(Footnotes omitted.)
Here, the defense asked J.K. and B.C. numerous questions on cross-examination challenging their identification not only of Chavers, but also of the three accomplices. The defense elicited testimony from B.C. that she had said, shortly after the assaults, that she could not identify her assailants. The defense attempted to show discrepancies between the victims’ trial testimony and their earlier statements, as well as conflicts existing between the two victims statements concerning the clothing each assailant was wearing and the sequence in which the various assaults were committed.
Moreover, in contesting the trial court’s failure to give requested jury charges, defense counsel stated, “Judge, the witnesses were impeached by prior inconsistent statements.” R. 521. Additionally, on appeal Chavers contests the trial court’s denial of his written requested jury charge on eyewitness identification. He states on appeal that the charge was proper because, “[t]he victims’s eyewitness identifications ... were extensively challenged on cross-examination.” Appellant’s brief at page 38.
Therefore, we find that the testimony was not offered to prove the truth of the matter asserted but was rather properly admitted nonhearsay testimony to rebut the inference that the in-court identification was fabricated.
III.
Chavers contends that the State failed to establish a proper chain of custody for the semen stains removed from the Geo or for a blood sample taken from him. The semen and the blood were scientifically tested and were used to identify Chavers’s DNA as the DNA in the semen deposited by the perpetrators of the crime. Chavers only objection to the chain of custody was made during the testimony of Deborah K. Dodd, an expert in forensic DNA testing with the Alabama Department of Forensic Sciences. The following transpired:
“MR. DEEN [defense attorney]: Excuse me, Judge, before she testifies as to any results, I’d object to her going into that in that they haven’t established a chain of custody and also haven’t laid the predicate as to the PCR test that she purportedly ran.
“THE COURT: As to chain of custody, that is correct. I’m going to require the *346 State to tie that up. If that’s not tied up, I will instruct — I will take proper instructions on that....”
R. A358-359.
The record contains no other reference to an improper chain of custody, and no objections were made to the trial court’s jury charges on this ground.
“ “When the admissibility of a particular item of evidence hinges upon proof of other facts, the court may, in its discretion, allow the evidence upon the proponent’s promise to “connect it up.” C. Gamble, McElroy’s Alabama Evidence § 13.01 (3d ed.1977). If the promised proof is not later presented, however, the party objecting to the introduction of the evidence should move for its exclusion.’ ”
Hooper v. State, 585 So.2d 142, 151 (Ala.Cr.App.1991), cert. denied, 503 U.S. 920, 112 S.Ct. 1295, 117 L.Ed.2d 517 (1992) (quoting Donahoo v. State, 505 So.2d 1067, 1072 (Ala.Cr.App.1986)).
The defense did not properly preserve a chain of custody objection for appellate review.
IV.
Chavers contends that the trial court erred in refusing to give his written requested jury charge no. 10. That requested instruction was a lengthy charge on factors that may be considered in evaluating identification testimony. The charge concluded by stating that a reasonable doubt as to the identity of the defendant as the perpetrator must result in a “not guilty” verdict. C.R. 117.
We will not recite the requested charge here because Chavers has not properly preserved this issue for appellate review. The defense objected to the trial court’s failure to give all his written requested jury charges, stating: “[W]e except to your not giving all our requested jury charges. They’re correct statements of the law.... And you said you’d cover them in your oral charge and you did not.” R. 520. Concerning requested charge no. 10, the defense specifically argued: “There also were two charges concerning eyewitness testimony, charges ten and eleven that were not given, that were not covered by your oral charge.” [4] R. 521.
“ ‘Under Rule 14, A.R.Cr.P.Temp. (now Rule 21.2, A.R.Cr.P.), to preserve alleged error in the refusal of requested charges, a defendant must not only object in a timely manner, he must “state with particularity the grounds of [his] objection.”... An objection which merely asserts that refused charges are correct or accurate statements of law does not meet this requirement.’ ”
Hardeman v. State, 651 So.2d 59, 63 (Ala.Cr.App.1994) (quoting Jones v. State, 591 So.2d 569, 573 (Ala.Cr.App.1991)). This issue is precluded from appellate review because it was not properly preserved.
We affirm Chavers’s convictions.
AFFIRMED.
All the Judges concur.

. At some point Smith dropped off Terrence Taylor, George Robinson, and Lee Harris. Smith had no involvement with the crimes that are the subject to this appeal.

. The victims' initials are used because of the nature of this case. See Rule 52, Ala.R.App.P.

. Apparently this page of the record was inadvertently omitted and later inserted as page A364.

. The trial court’s refusal to give requested charge no. 11 was not an issue on appeal.