Rel: February 6, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2025-2026

———————————————

### CR-2024-0581

———————————————

### William Kiwanis Carroll

### v.

### State of Alabama

### Appeal from Montgomery Circuit Court
### (CC-22-692)

COLE, Judge.

William Kiwanis Carroll appeals his conviction for provocation manslaughter, a violation of § 13A-6-3(a)(2), Ala. Code 1975, as well as his resulting sentence of 10 years' imprisonment. For the following reasons, we reverse Carroll's conviction and sentence.

Facts and Procedural History

On July 8, 2022, the Montgomery County grand jury issued a one-count indictment against Carroll, charging him with the murder of Eric Witcher, a violation of § 13A-6-2(a)(1), Ala. Code 1975. Carroll pleaded not guilty to the offense. Before trial, Carroll filed a motion in limine seeking to exclude collateral-acts evidence from admission. The Montgomery Circuit Court held a pretrial hearing. The State argued that Carroll -- by previously firing a weapon at a woman whom he had briefly dated, Rodneshia Harris, after she refused to have sexual relations with him -- had demonstrated a predisposition to use gun violence against women as a means of retaliation or control when his sexual advances are rebuffed. The State further argued that such retaliation or desire to control was Carroll's motivation to murder Witcher, the then-boyfriend of Carroll's most recent ex-girlfriend. Carroll argued that the alleged incident with Harris was completely unrelated to this case, involved different purported victims, and that the evidence regarding the alleged prior incident with Harris would be used solely to prove that Carroll possessed the propensity to commit the crime charged. After hearing the

arguments of the parties, the trial court denied the motion, stating as follows:

> "All right. And the Court has had a chance to review some of that case law that was given to me yesterday. And there's several cases that were given that said motive is always admissible. I think I saw the newest case, 2023 case. And I think that the Court always allows the State to have a non-hearsay witness to prove anything.
>
> "So based on that the Court will allow [Harris] to testify. And I will give a standing objection to [Carroll]."

(R. 187.)

At trial, the evidence revealed that Witcher and Roshaun Steele had been in an on-again/off-again relationship for approximately 15 years. During one of their breakups, Steele met Carroll, whose mother lived in an adjacent apartment, and the two began dating. Their relationship ended, however, after only a few months, and Steele then resumed her relationship with Witcher. Steele testified that the breakup did not sit well with Carroll and that he indicated to her multiple times that he wanted to get back together with her. According to Steele, Carroll attempted to sabotage her relationship with Witcher by sending Witcher a pornographic video of Steele having sexual intercourse with Carroll while they were dating.

The evidence further revealed that, on April 30, 2020, Witcher texted Steele on her cellular telephone, notifying her that he was going to come over to her apartment. According to Steele, Witcher was visibly angry when he arrived and told her that he had walked past Carroll, who was standing outside of his mother's apartment, and that Carroll had tried to "dap" him by giving him either a handshake or a fist-bump in greeting as he passed. Witcher then remained in the apartment for a short time but was too outraged to speak to Steele. Witcher then decided to leave. As Steele opened the door for him, Witcher saw Carroll still standing outside of his mother's apartment. Witcher then began walking directly toward Carroll. According to Steele, Carroll uttered something to Witcher as he approached, but Steele was not able to discern what was said.[1] Steele testified that Witcher then began "fighting, punching, punching" Carroll as Carroll held his hands up and attempted to shield himself from Witcher's blows. (R. 266.) Steele then saw Carroll start to pull his jogging pants down and retrieve a revolver from the pocket of the shorts he was wearing underneath his pants. Carroll then began

---

[1]According to Carroll's mother, who also testified at trial, she heard Carroll say "I know you're not coming" just before the shooting. (R. 628.)

4

shooting at Witcher. According to Steele, Witcher tried to flee but fell to the ground as Carroll continued to fire. Witcher was shot twice -- once in the left hand and once in the left arm -- and died when the bullet striking his arm travelled into his chest. Carroll then fled the scene; however, he flagged down a responding officer traveling to the scene and turned himself in.

Carroll testified on his own behalf at trial. Carroll testified that he has had major health problems ever since he was a child and that he suffers greatly from seizures that render him quasi-unconscious. Carroll further testified that his medical conditions have worsened ever since he was in a motor-vehicle accident in 2017, in which he fractured his skull and injured his neck and back, and now has limited mobility. According to Carroll, he had to walk with a cane for approximately two years, and the doctors warned him that, if he ever injured his head again, he could die.

Carroll further testified that, although he had dated Steele, he had no desire to mend their relationship after it ended and that, at the time of the incident, he was in another relationship. Carroll also stated that he had no animus toward Witcher.

Regarding the incident, Carroll testified that, on April 30, 2020, he was waiting on his mother outside her apartment to make sure she got into her car safely and saw Witcher walking to Steele's adjacent apartment. Carroll stated that he greeted Witcher and tried to "dap" him as he walked past, but Witcher allegedly responded that he did not want to speak to Carroll. Witcher then went into Steele's apartment, and Carroll's mother walked to her car. While Carroll was watching his mother, Witcher exited Steele's apartment and approached Carroll unprompted, stating: "you F'd up." (R. 696-98.) Witcher then punched Carroll twice on the left side of his head. Carroll testified that he did not start the fight with Witcher, that he did not hit Witcher at all, and that he raised his arms only to block Witcher's punches. According to Carroll, he immediately felt "[d]azed, confused, [and] didn't know what was going on" from the first punch and that he tried to shield himself. (R. 699.) Carroll testified that he saw a "nickel-plated gun that [Witcher] had" and "did what I had to do." (R. 700-01.) Carroll further testified that he fired his gun and then ran from the scene because he feared for his life -- both

from Witcher's gun[2] and from being beaten on the head. Carroll stated that he ran to a nearby gas station where he told a clerk to call the police. While at the gas station, Carroll saw police officers driving toward the scene, so he flagged an officer down and turned himself in.

After the defense rested, the jury found Carroll guilty of the lesser-included offense of provocation manslaughter. The trial court sentenced Carroll on July 8, 2024, to 10 years' imprisonment. This appeal follows.

<u>Analysis</u>

On appeal, Carroll argues that the trial court erred when it allowed the State to introduce, pursuant to Rule 404(b), Ala. R. Evid., evidence tending to show that, a few months before the incident involving Witcher, Carroll shot a weapon at Harris. The State contends that, under Rule 404(b), the evidence was admissible as proof of Carroll's motive to murder Witcher because, it said, Witcher was in a relationship with Carroll's most recent ex-girlfriend and Carroll's prior act against Harris demonstrated that he possessed a general "willingness to use gun violence to intimidate or control women when they do not accede to or act

---

[2]In Carroll's statement to police, he stated that he saw Witcher drop his gun as he fell. (C. 317.) However, no gun was ever found. (R. 485.)

against his desires." (State's brief, p. 21.) We agree with Carroll that the trial court erred when it admitted the evidence over his objections. Accordingly, Carroll's conviction and sentence are due to be reversed.

In Horton v. State, 217 So. 3d 27 (Ala. Crim. App. 2016), this Court held the following regarding evidence admitted under Rule 404(b):

> "'"The admission or exclusion of evidence is a matter within the sound discretion of the trial court." Taylor v. State, 808 So. 2d 1148, 1191 (Ala. Crim. App. 2000), aff'd, 808 So. 2d 1215 (Ala. 2001). "The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion." Ex parte Loggins, 771 So. 2d 1093, 1103 (Ala. 2000). This is equally true with regard to the admission of collateral-bad-acts evidence. See Davis v. State, 740 So. 2d 1115, 1130 (Ala. Crim. App. 1998). See also Irvin v. State, 940 So. 2d 331, 344-46 (Ala. Crim. App. 2005).'

"Windsor v. State, 110 So. 3d 876, 880 (Ala. Crim. App. 2012).

> "Generally, '[e]vidence of any offense other than that specifically charged is prima facie inadmissible.' Bush v. State, 695 So. 2d 70, 85 (Ala. Crim. App. 1995), aff'd, 695 So. 2d 138 (Ala. 1997). '[T]he exclusionary rule prevents the State from using evidence of a defendant's prior [or subsequent] bad acts to prove the defendant's bad character and, thereby, protects the defendant's right to a fair trial.' Ex parte Drinkard, 777 So. 2d 295, 302 (Ala. 2000). '[T]he purpose of the rule is to protect the defendant's right to a fair trial by preventing convictions based on the jury's belief that the

8

defendant is a "bad" person or one prone to commit criminal acts.' Ex parte Arthur, 472 So. 2d 665, 668 (Ala. 1985). '"The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors."' Ex parte Cofer, 440 So. 2d 1121, 1123 (Ala. 1983) (quoting C. Gamble, McElroy's Alabama Evidence § 69.01(1) (3d ed. 1977)).

"However, '[t]he State is not prohibited from ever presenting evidence of a defendant's prior [or subsequent] bad acts.' Moore v. State, 49 So. 3d 228, 232 (Ala. Crim. App. 2009). '[E]vidence of collateral crimes or bad acts is admissible as part of the prosecutor's case if the defendant's collateral misconduct is relevant to show his guilt other than by suggesting that he is more likely to be guilty of the charged offense because of his past misdeeds.' Bush, 695 So. 2d at 85.

> "'"In all instances, the question is whether the proposed evidence is primarily to prove the commission of another disconnected crime, or whether it is material to some issue in the case. If it is material and logically relevant to an issue in the case, whether to prove an element of the crime, or to controvert a material contention of defendant, it is not inadmissible because in making the proof the commission of an independent disconnected crime is an inseparable feature of it."'

"Bradley v. State, 577 So. 2d 541, 547 (Ala. Crim. App. 1990) (quoting Snead v. State, 243 Ala. 23, 24, 8 So. 2d 269, 270 (1942)). Rule 404(b), Ala. R. Evid., provides:

9

"'Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.'

"'"Rule 404(b) is a principle of limited admissibility. This means that the offered evidence is inadmissible for one broad, impermissible purpose, but is admissible for one or more other limited purposes."' Taylor v. State, 808 So. 2d 1148, 1165 (Ala. Crim. App. 2000), aff'd, 808 So. 2d 1215 (Ala. 2001) (quoting C. Gamble, McElroy's Alabama Evidence § 69.01 (5th ed. 1996)). Moreover:

"'Rule 404(b) is a test of relevancy. Rule 401, Ala. R. Evid., defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." As this Court noted in Hayes v. State, 717 So. 2d 30 (Ala. Crim. App. 1997): "Alabama recognizes a liberal test of relevancy, which states that evidence is admissible 'if it has any tendency to lead in logic to make the existence of the fact for which it is offered more or less probable than it would be without the evidence.'" 717 So. 2d at 36, quoting C. Gamble, [McElroy's] Alabama Evidence § 401(b). "[A] fact is admissible against a relevancy challenge if it has any probative value, however[] slight, upon a matter in the case."

10

> Knotts v. State, 686 So. 2d 431, 468 (Ala. Crim. App. 1995), aff'd, 686 So. 2d 486 (Ala. 1996).'

"Draper v. State, 886 So. 2d 105, 119 (Ala. Crim. App. 2002). Because the question of the admissibility of collateral-act evidence is whether the evidence is relevant for a limited purpose other than bad character, 'the list of traditionally recognized exceptions [to the exclusionary rule] is not exhaustive and fixed.' Bradley, 577 So. 2d at 547. However,

> "'[t]he State has no absolute right to use evidence of prior acts to prove the elements of an offense or to buttress inferences created by other evidence. Evidence of prior bad acts of a criminal defendant is presumptively prejudicial. It interjects a collateral issue into the case which may divert the minds of the jury from the main issue.'

"Ex parte Cofer, 440 So. 2d at 1124. Therefore, '[f]or collateral-act evidence to be admissible for one of the "other purposes" in Rule 404(b), there must be a "'real and open issue as to one or more of those "other purposes."'"' Draper, 886 So. 2d at 117 (quoting Gillespie v. State, 549 So. 2d 640, 645 (Ala. Crim. App. 1989), quoting in turn, Bowden v. State, 538 So. 2d 1226, 1227 (Ala. 1988)). When the question of the admissibility of collateral-acts evidence is 'extremely close, we conclude that any doubt about the admissibility of the testimony should, given the highly prejudicial nature of the evidence, be resolved in favor of the accused.' Brewer v. State, 440 So. 2d 1155, 1158 (Ala. Crim. App. 1983).

> "Furthermore, 'even though evidence of collateral crimes or acts may be relevant to an issue other than the defendant's character, it should be excluded if "it would serve comparatively little or no purpose except to arouse the passion, prejudice, or sympathy of the jury," ... or put another way, "unless its probative value is 'substantially outweighed by its undue prejudice.'"' Bradley, 577 So. 2d at 547-48

11

(citations omitted). 'Before its probative value will be held to outweigh its potential prejudicial effect, the evidence of a collateral crime must not only be relevant, it must also be reasonably necessary to the state's case, and it must be plain and conclusive.' Bush, 695 So. 2d at 85. See also Thompson v. State, 153 So. 3d 84, 136 (Ala. Crim. App. 2012) ('The [Alabama Supreme] Court [has] cautioned that Rule 404(b) evidence must be "reasonably necessary to [the State's] case." [Ex parte Jackson,] 33 So. 3d [1279,] 1286 [(Ala. 2009) ].').

"As this Court explained in Woodard v. State, 846 So. 2d 1102 (Ala. Crim. App. 2002):

"'Evidence of collateral crimes is "presumptively prejudicial because it could cause the jury to infer that, because the defendant has committed crimes in the past, it is more likely that he committed the particular crime with which he is charged -- thus, it draws the jurors' minds away from the main issue." Ex parte Drinkard, 777 So. 2d 295, 296 (Ala. 2000). In Robinson v. State, 528 So. 2d 343 (Ala. Crim. App. 1986), this Court explained the exclusionary rule as follows:

"'"'"On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in

12

question."' Pope v. State, 365 So. 2d 369, 371 (Ala. [Crim.] App. 1978), quoting C. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977). '"This exclusionary rule is simply an application of the character rule which forbids the State to prove the accused's bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors."' Ex parte Arthur, 472 So. 2d 665, 668 (Ala. 1985), quoting [C. Gamble,] McElroy's [Alabama Evidence], § 69.01(1) [(3d ed. 1977)]. Thus, the exclusionary rule serves to protect the defendant's right to a fair trial. '"The jury's determination of guilt or innocence should be based on evidence relevant to the crime charged."' Ex parte Cofer, 440 So. 2d 1121, 1123 (Ala. 1983); Terrell v. State, 397 So. 2d 232, 234 (Ala. [Crim.] App. 1981), cert. denied, 397 So. 2d 235 (Ala. 1981); United States v. Turquitt, 557 F.2d 464, 468 (5th Cir.1977).

"'"'If the defendant's commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than by showing of bad character, then proof of such other act is admissible.' Saffold v. State, 494 So. 2d 164 (Ala. [Crim.] App. 1986). The

13

well-established exceptions to the exclusionary rule include: (1) relevancy to prove identity; (2) relevancy to prove res gestae; (3) relevancy to prove scienter; (4) relevancy to prove intent; (5) relevancy to show motive; (6) relevancy to prove system; (7) relevancy to prove malice; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes. Willis v. State, 449 So. 2d 1258, 1260 (Ala. [Crim.] App. 1984); Scott v. State, 353 So. 2d 36 (Ala. [Crim.] App. 1977). However, the fact that evidence of a prior bad act may fit into one of these exceptions will not alone justify its admission. '"Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government's case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects."' Averette v. State, 469 So. 2d 1371, 1374 (Ala. [Crim.] App. 1985), quoting United States v. Turquitt, supra at 468-69. '"'Prejudicial' is used in this phrase to limit the introduction of probative evidence of prior misconduct only when

14

it is <u>unduly</u> and <u>unfairly</u> prejudicial."
[Citation omitted.] "Of course,
'prejudice, in this context, means more
than simply damage to the opponent's
cause. A party's case is always
damaged by evidence that the facts are
contrary to his contention; but that
cannot be ground for exclusion. What
is meant here is an undue tendency to
move the tribunal to decide on an
improper basis, commonly, though not
always, an emotional one.'"' <u>Averette</u>
<u>v. State</u>, <u>supra</u>, at 1374."

"'528 So. 2d at 347.'

"846 So. 2d at 1106-07."

<u>Horton</u>, 217 So. 3d at 45-48.

In this case, Harris testified that she met Carroll in 2019 and went

on a few dates with him. On one occasion, they met at a motel. At some

point during the night, Carroll attempted to initiate sexual intercourse

with Harris; however, she rejected his advances and told him that she

wanted to leave. According to Harris, Carroll became very angry and

offered to pay her for sexual intercourse. When Harris continued to

refuse, Carroll stood up and laid a revolver on the hotel nightstand.

Harris testified that, after she saw the weapon, she became quiet and

began to shake. Carroll then berated her for approximately an hour

before he eventually started to fall asleep. Once Carroll fell asleep, Harris ran from the room, and when she started her car, she saw Carroll running toward her from the motel room and heard a gunshot. Harris, however, drove away before Carroll reached her. Harris reported the incident to the police, and charges were filed; however, all charges against Carroll were later dismissed when Harris failed to appear to testify as the complaining witness.

The State argues that this evidence was properly admitted at trial to demonstrate Carroll's motive in killing Witcher. Regarding motive, the Alabama Supreme Court has held that

> "'"[m]otive is an inducement, or that which leads or tempts the mind to do or commit the crime charged." Spicer v. State, 188 Ala. 9, 26, 65 So. 972, 977 (1914). Motive is "that state of mind which works to 'supply the reason that nudges the will and prods the mind to indulge the criminal intent.'" C. Gamble, Character Evidence[: A Comprehensive Approach], at 42 [(1987)]. "Furthermore, testimony offered for the purpose of showing motive is always admissible. It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense." (Emphasis in original, citations omitted.) Bowden v. State, 538 So. 2d 1226, 1235 (Ala. 1988).'

"Ex parte Register, 680 So. 2d 225, 227 (Ala. 1994)."

16

Towles v. State, 168 So. 3d 133, 143 (Ala. 2014).

"'The prosecution may prove former acts of hostility by the accused toward the victim for the purpose of showing motive and malice.'" Scott v. State, 163 So. 3d 389, 436 (Ala. Crim. App. 2012) (quoting Carroll v. State, 370 So. 2d 749, 759 (Ala. Crim. App. 1979) (emphasis added)). Here, however, the disputed testimony did not involve any evidence regarding a former act of hostility toward the victim in this case. Rather, the evidence concerned Carroll's alleged acts of hostility toward Harris, who was wholly irrelevant to the alleged "love triangle" involving Carroll, Witcher, and Steele and to the crime charged here.

This Court has long held that a prior act of hostility or violence is admissible against the accused to prove motive only when it pertains to the victim of the crime charged. As this Court held in Caylor v. State, 353 So. 2d 8 (Ala. Crim. App. 1977):

> "It is a basic and fundamental principle of evidence that in a murder prosecution, it is not permissible to show a difficulty between the accused and a third person not connected with the victim or the offense. Johnson v. State, 265 Ala. 360, 91 So. 2d 476 (1957); Stain v. State, 273 Ala. 262, 138 So. 2d 703 (1962); Mainor v. State, [348 So. 2d 1083 (Ala. Crim. App. 1977)]....

17

"The state is not allowed to supply the intent to kill one victim by showing that the defendant had assaulted a third party on another unrelated occasion. While proof of other offenses is sometimes admissible as exceptions to the general rule barring admissibility, this is not one of the exceptions. Proof that the appellant shot at another in no way shows plan, scheme, or intent to kill the deceased or <u>any of the other exceptions to the general rule</u>.

"In cases where the evidence presents an issue of self-defense, the defendant as well as the state may prove the fact of a prior difficulty between the defendant and the deceased. <u>Wright v. State</u>, 252 Ala. 46, 39 So. 2d 395 (1949). However this rule of evidence does not embrace a prior difficulty between the appellant and a third party. The admission of this testimony constitutes reversible error."

353 So. 2d at 10 (emphasis added). <u>See, e.g.</u>, <u>Horton</u>, 217 So. 3d at 56 (holding that it was reversible error for the trial court to allow the introduction of evidence of threats and assaults made toward third parties in a murder trial when the only connection between the victims was that the incidents occurred within several weeks of each other); <u>Moore v. State</u>, 878 So. 2d 328, 336 (Ala. Crim. App. 2003) ("[T]he State should not have been allowed to supply Moore's intent to kill in the present case, or an apparent motive for the murder, by showing that he had assaulted and killed other persons on unrelated occasions under what appear to be wholly unrelated circumstances."); <u>Aaron v. State</u>, 596 So. 2d 29, 30-31 (Ala. Crim. App. 1991) (quoting <u>Caylor</u>, 353 So. 2d at 10)

18

(stating the same). But see Terry v. State, 397 So. 2d 217 (Ala. Crim. App. 1981) (holding that, in a crime established through the doctrine of transferred intent, collateral acts of the defendant were admissible to demonstrate that he possessed the motive to murder the intended victim but killed a third party instead).

These two incidents were completely independent of one another, occurred at different times and places, were allegedly committed under dissimilar circumstances, and involved entirely different sets of facts and types of victim. Carroll did not shoot at Steele after being spurned from her affection, as allegedly happened with Harris. Rather, Carroll shot Witcher. And, Harris had nothing to do with Witcher or Steele. Accordingly, the State failed to establish a sufficient "logical link," Brewer v. State, 440 So. 2d 1155, 1160 (Ala. Crim. App. 1983), to connect the acts. There was simply no nexus between the collateral act of shooting at Harris and the shooting of Witcher. Thus, the trial court erred when it allowed the State to admit evidence of Carroll's "prior bad act" which showed his "bad character, inclination or propensity … to commit the type of crime for which he [was] being prosecuted." Brewer, 440 So. 2d at 1159.

19

Moreover, Harris's testimony was not reasonably necessary to the State's case because the State had already attributed to Carroll a different, but sufficient, motivation to commit the crime charged. Steele testified that Carroll had told her many times that he wanted her to get back together with him and that Carroll had attempted to get Witcher to leave Steele. Specifically, the State, under Rule 404(b), introduced evidence regarding one incident wherein Carroll previously attempted to sabotage Steele and Witcher's relationship by sending Witcher a pornographic video of him and Steele having sexual intercourse. Steele testified that Witcher, upon receiving the pornographic video of Carroll and Steele, told her what Carroll had done and that she confronted Carroll, who did not deny sending Witcher the video and told her that he sent it to hurt Witcher so that "he would get mad enough to where he'[d] leave [her] so [she] and [Carroll] can be back together." (R. 259-60, 274.) This evidence was properly admitted collateral-act evidence that demonstrated that Carroll was induced to commit the murder to rid himself of a romantic rival. Based on this evidence alone, the State could argue that Carroll's motive to commit the murder was because he wanted to end Witcher and Steele's relationship and date Steele himself. The

20

additional collateral-act evidence indicating that Carroll had previously shot at Harris, a female who had refused his sexual advances, was both unnecessary and irrelevant. In short, because the State had already introduced evidence demonstrating a <u>direct</u> link between Carroll's motive and Witcher's murder, the evidence indicating that he had previously shot at Harris was not reasonably necessary to prove the State's case.

Additionally, the trial court's jury instruction did nothing to cure the error. After Harris testified, the trial court issued the following instruction to the jury:

> "All right. Ladies and gentlemen of the jury I want to reiterate something.[3] The jury shall disregard from the testimony -- the last witness's testimony any testimony regarding [other collateral 'shootouts' not involving Harris], incidents of having beef [with other third parties not involving Harris], marijuana, schizophrenia and mental disease or defect."

(R. 395.) Thus, even if Harris's testimony had been properly admitted for the jury to consider as evidence of Carroll's <u>motive</u>, this jury instruction did not apply to testimony about the prior incident with Harris, and "the jury was free to use this evidence for the broad --

---

[3]Previously, the trial court had instructed the jury to disregard Harris's testimony regarding Carroll's engaging in "multiple shootouts." (R. 331.)

inadmissible -- purpose prohibited by Rule 404(b) -- as indicating that because [Carroll] committed other crimes, he was more likely to have committed the murder." Horton, 217 So. 3d at 58. Thus, even if the collateral-act evidence had been admissible for the limited purpose of showing motive, because the evidence was not reasonably necessary to the State's case and the use of the evidence was not limited to motive, we hold that the prejudicial effect of the evidence regarding Carroll's shooting at Harris far outweighed its probative value.

Finally, we are not persuaded by the State's argument that the harmless-error rule, see Rule 45, Ala. R. App. P., should apply. The State unconvincingly argues that Harris's testimony "actually worked to Carroll's benefit rather than to his detriment" when the jury convicted him of the lesser-included offense of provocation manslaughter but rejected his claim of self-defense. (State's brief, p. 24.) Specifically, the State contends that the jury could have found that Carroll did not intentionally commit murder because it, instead, found that "he acted as he did because that is how Carroll acts -- violent displays involving guns -- when he is rejected by a woman," which the State says renders any error harmless. (State's brief, pp. 24-25.)

22

First, the "'undue tendency to move the tribunal to decide [Carroll's guilt] on an improper basis,'" Averette v. State, 469 So. 2d 1371, 1374 (Ala. Crim. App. 1985) (citation omitted) (quoted with approval in Horton, supra) -- i.e., that he killed Witcher because he acted in conformity with his bad character -- is exactly the type of prejudice that rendered the trial court's error in this case reversible. Second, the jury -- by rejecting Carroll's claims of self-defense and convicting him of provocation manslaughter -- implicitly found that he formed the requisite intent to commit murder. Therefore, the State's argument that the complained-of-evidence may have made the jury believe that Carroll did not have an intent to kill Witcher is baseless.

Although it is true that "[a] person does not commit murder under [§ 13A-6-2(a)(1), Ala. Code 1975,] if he or she was moved to act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to reassert itself," § 13A-6-2(b), Ala. Code 1975, it is not because the defendant lacked the intent to kill. Rather, § 13A-6-3(a)(2) provides, in relevant part:

"(a) A person commits the crime of manslaughter if he:

"....

"(2) <u>Causes the death of another person under circumstances that would constitute murder under Section 13A-6-2[, Ala. Code 1975]</u>; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."

(Emphasis added.)  "A person commits the crime of murder if[,] … [w]ith intent to cause the death of another person, he or she causes the death of that person or of another person."  § 13A-6-2(a)(1).  Thus, by finding that Carroll committed the offense of provocation manslaughter, the jury necessarily found that Carroll intentionally murdered Witcher.  See <u>Crayton v. State</u>, 392 So. 3d 104, 117 (Ala. Crim. App. 2023) (citing <u>Carter v. State</u>, 843 So. 2d 812, 815 (Ala. 2002) (recognizing that provocation manslaughter is an intentional killing)).

Furthermore, regarding the second prong of § 13A-6-3(a)(2) -- that Carroll "cause[d] the death due to a sudden heat of passion caused by <u>provocation recognized by law</u>, and before a reasonable time for the passion to cool and for reason to reassert itself" (emphasis added) -- Harris's testimony did not provide any factual basis for the jury to find that a sufficient, legal provocation existed.

> > """[P]rovocation can, in no case, be less than assault, either actually committed, or menaced under such pending circumstances as reasonable to convince the mind that the accused has cause for believing, and did believe, he would be presently assaulted, and that he struck, not in consequence of a previously formed design, general or special, but in consequence of the passion suddenly aroused by the blow given, or apparently about to be given ...."'

> "Easley v. State, 246 Ala. 359, 362, 20 So. 2d 519, 522 (1944), quoting Reeves v. State, 186 Ala. 14, 16-17, 65 So. 160 (1914).

> > "'Alabama courts have, in fact, recognized three legal provocations sufficient to reduce murder to manslaughter: (1) when the accused witnesses his or her spouse in the act of adultery; (2) when the accused is assaulted or faced with an imminent assault on himself; and (3) when the accused witnesses an assault on a family member or close relative.'

> "Spencer v. State, 58 So. 3d 215, 245 (Ala. Crim. App. 2008)."

Bohannon v. State, 222 So. 3d 457, 510-11 (Ala. Crim. App. 2015) (emphasis added), aff'd, 222 So. 3d 525 (Ala. 2016). Thus, because the jury found that reasonable provocation existed because of Witcher's assault upon Carroll, Harris's testimony (which contributed nothing regarding Witcher's actions) could not have affected the jury's decision to

25

find Carroll guilty of provocation manslaughter and acquit him of murder.

However, Harris's testimony certainly could have influenced the jury's decision to find that Carroll did not act in self-defense and that he formed the intent necessary to commit murder -- and thereby provocation manslaughter. Indeed, although the State introduced other evidence tending to demonstrate Carroll's motive to commit the crime and the jury rejected Carroll's self-defense claim, the jury found Carroll guilty of provocation manslaughter, "'which is designed to cover those situations where the jury does not believe a defendant is guilty of murder but also does not believe the killing was totally justified by self-defense.'" Johnson v. State, 571 So. 2d 375, 377 (Ala. Crim. App. 1990) (quoting Shultz v. State, 480 So. 2d 73, 76 (Ala. Crim. App. 1985)).

Section 13A-3-23, Ala. Code 1975, provides, in relevant part:

"(a) A person is justified in using physical force upon another person in order to defend himself … from what he … reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he … may use a degree of force which he … reasonably believes to be necessary for the purpose. A person may use deadly physical force … if the person reasonably believes that another person is:

"(1) Using or about to use unlawful deadly physical force.

"....

"(3) <u>Committing or about to commit ...
assault in the first or second degree</u> ...."

(Emphasis added.)

At trial, it was disputed whether Witcher was armed with a gun, yet it was undisputed that Witcher was the first aggressor. Carroll also testified at trial that he was in fear for his own life and provided testimony that even a simple assault could have placed his life in jeopardy based on his prior accident. Carroll even called one of his physicians, Dr. Diane Counce, to testify in his defense, and she testified that Carroll suffered from the effects of a "[f]ractured temporal bone, cervical strain, low back strain, and paresthesia" from a motor-vehicle accident that occurred in 2017. (R. 400.) Dr. Counce also testified that a person with a head injury such as Carroll's could suffer from seizures if reinjured and confirmed that seizures "can lead to death or serious physical injury" (R. 406) and that, in some cases, "reinjury does lead to permanent disability and symptoms." (R. 408.)

Clearly, there was evidence before the jury indicating both that Witcher's assault on Carroll led Carroll to act in self-defense based upon

27

a reasonable belief that he was at risk of death or serious physical injury and that Carroll committed murder or provocation manslaughter. Carroll's motivation to commit the crime was, therefore, a crucial factor for the jury to consider in making this determination. Cf. Chavers v. State, 714 So. 2d 341, 344 (Ala. Crim. App. 1997) (recognizing that "'[t]he purpose of the harmless error rule is to avoid setting aside a conviction or sentence for small errors or defects that have little, if any, likelihood of changing the result of the trial'" and that the harmless-error rule applied because the evidence of the defendant's guilt was "ironclad") (quoting Davis v. State, 718 So. 2d 1148, 1164 (Ala. Crim. App. 1995), aff'd, 718 So. 2d 1166 (Ala. 1998)) (emphasis added)). Accordingly, because this Court cannot say with certainty "'that the trial court's error did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant,'" Chapman v. State, 196 So. 3d 322, 331-32 (Ala. Crim. App. 2015) (quoting Gracie v. State, 92 So. 3d 806, 813 (Ala. Crim. App. 2011)), we decline to hold that the trial court's error was harmless beyond a reasonable doubt. Rather, the admission of the collateral-act evidence constituted reversible error, and Carroll is entitled to a new trial.

<u>Conclusion</u>

For these reasons, Carroll's conviction for provocation manslaughter is reversed.

REVERSED AND REMANDED.

Windom, P.J., and Kellum and Anderson, JJ., concur. Minor, J., concurs in the result.